UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN HARRINGTON,

      Petitioner,                         Civil Action No. 12-CV-13136

vs.                                      HON. BERNARD A. FRIEDMAN

JEFFREY WOODS,

      Respondent.
_____/

## OPINION AND ORDER DENYING PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

        Petitioner in this matter has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his conviction of first-degree premeditated murder, Mich. Comp. Laws § 750.316b(1)(a).  For the reasons stated below, the Court shall deny the application.

### I. Background

        Petitioner was convicted following a jury trial in Wayne County Circuit Court.[1]  The Michigan Court of Appeals summarized the relevant facts as follows:

>         Defendant's conviction arises from the fatal shooting of Michael Martin, whose body was discovered in a field near an apartment complex where he lived.  Martin died from two gunshot wounds, one to the abdomen and one to his head.  Defendant allegedly committed the offense along with codefendant George Clark.
>
>         At trial, the prosecution's principal witness, Bearia Stewart, a resident of the apartment complex where the victim was killed,

_____

[1] Petitioner was originally convicted of this crime on February 11, 2003.  The court granted petitioner a new trial based on misconduct of petitioner's first defense attorney.  Petitioner's second and third trials ended in hung juries.  Petitioner was convicted after a fourth trial on January 20, 2006.

> denied witnessing the shooting or hearing any gunshots. Stewart
> admitted, however, that she previously testified at defendant's and
> Clark's preliminary examinations that she saw defendant and Clark
> arguing and fighting with the victim about money and drugs, after
> which Clark dragged the victim into the field behind the apartment
> complex, and then she heard three or four gunshots. At trial, Stewart
> claimed that the police threatened her if she would not cooperate and
> forced her to testify at the preliminary examinations. However, the
> prosecution also introduced evidence that Stewart was threatened by
> defendant and others associated with this case.

*People v. Harrington*, 2008 WL 747084, at *1 (Mich. App. Mar. 20, 2008). Petitioner's conviction

was affirmed on appeal. *See id., lv. den.* 480 Mich. 1032 (2008).

Petitioner then filed a post-conviction motion for relief from judgment pursuant to

MCR 6.500, *et seq*, which the trial court denied. *See People v. Harrington,* No. 02-13495 (Wayne

County Cir. Ct. Dec. 13, 2010). The Michigan appellate courts denied leave to appeal. *See People*

*v. Harrington,* No. 303086 (Mich. App. Sept. 20, 2011); *lv. den.* 491 Mich. 940 (2012).

In his amended petition, petitioner seeks a writ of habeas corpus on the following

grounds:

> I. Mr. Harrington's Sixth Amendment right to confront witnesses
> was violated when the trial court foreclosed defense examination of
> the chief investigating officer, Anthony Abdallah, on key issues
> regarding flaws in his investigation, as well as his credibility and
> bias.
>
> II. Mr. Harrington was denied his Fourteenth Amendment right to
> due process of law when the trial court foreclosed rebuttal testimony
> from his prior defense counsel regarding allegations of witness
> tampering made by the state.
>
> III. Mr. Harrington should be afforded habeas relief on a
> freestanding claim of actual innocence.

2

## II. Standard of Review

Under 28 U.S.C. § 2254(d), a writ of habeas corpus may be issued only if the state court's adjudication of petitioner's claim(s) "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." The following principles govern the application of this standard:

> A legal principle is "clearly established" for purposes of habeas corpus review "only when it is embodied in a holding of [the Supreme] Court." *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S.Ct. 1171, 175 L.Ed.2d 1003 (2010) (citations omitted). "[T]he relevant decision for purposes of determining 'clearly established Federal law' is the last state court decision that adjudicated the claim on the merits." *Miller*, 694 F.3d at 696 (citation omitted).
>
> The "contrary to" and "unreasonable application" clauses set forth in 28 U.S.C. § 2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). The "contrary to clause" applies when a "state court applies a rule that contradicts the governing law set forth" by the Supreme Court of the United States or if the state court "decides a case differently ... on a set of materially indistinguishable facts." (*Williams v. Taylor*, 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). The "unreasonable application" clause applies where "the state court correctly identifies the governing legal principle" set forth by the Supreme Court, "but unreasonably applies it to the facts of the particular case." *Bell*, 535 U.S. at 694, 122 S.Ct. 1843 (citing *Williams*, 529 U.S. at 407–08, 120 S.Ct. 1495).
>
> In determining whether a state court's decision unreasonably applied clearly established law, federal courts must focus "on whether the state court's application of clearly established federal law is objectively unreasonable [.]" *Id*. "[A]n unreasonable application is different from an incorrect one." *Id*. (citation omitted).

*Poole v. MacLaren*, 547 F. App'x 749, 751-52 (6th Cir. 2013). "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court

3

decisions be given the benefit of the doubt'"[.] *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (citations omitted).  "The petitioner carries the burden of proof."  *Id.*

## III.  Discussion

### A.  Claim 1:  The Confrontation Clause Claim

Petitioner first argues that his Sixth Amendment right to confront witnesses was violated when the trial court limited his cross-examination of the chief investigating detective, Anthony Abdallah, on issues regarding flaws in the investigation, witness credibility, and bias.

The Sixth Amendment's Confrontation Clause guarantees the accused the right to cross examine adverse witnesses to uncover possible biases and expose witnesses' motivation in testifying.  *See Davis v. Alaska*, 415 U.S. 308, 315-16 (1974).  However, this clause "guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *U.S. v. Owens*, 484 U.S. 554, 559 (1988) (internal quotation marks and citations omitted).  "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

Petitioner argues that the trial judge violated his right to confrontation by refusing to allow his attorney to question Abdallah about his visit to the Rancho Motel while investigating the alibi of petitioner's co-defendant, George Clark.  At petitioner's second trial, which ended in a hung jury, Abdallah testified that he went to the motel to check the guest registration list for the night of the murder because Clark and his girlfriend, Tyronda Moore, allegedly had spent the night

4

there.  Abdallah testified at the prior trial that Clark was not on the hotel registration list.  At petitioner's fourth trial, petitioner's counsel attempted to call the motel owner, Vilas Patel, to testify that Clark and his girlfriend did appear as registered guests at his hotel that night.  The trial judge ruled Patel could not testify on this issue because she deemed the questions irrelevant.  Defense counsel then attempted to call Abdallah as a defense witness to question him about the hotel registration card but the judge disallowed the question on the grounds that it was irrelevant.

The Michigan Court of Appeals rejected petitioner's claim, finding that defense counsel failed to establish any relevancy to his case regarding the motel registration and then noted the trial court's willingness to allow inquiry if a proper foundation could be established.  Defense counsel did not revisit this issue and therefore failed to lay a foundation.  The trial court did not err by excluding evidence which it found to be irrelevant when defense counsel failed to provide a foundation for its admission.  Evidence that the co-defendant and his girlfriend had been registered at the motel on the night of the murder would have been, at most, remotely relevant.  The evidence would not have provided an alibi for petitioner, nor would it have precluded the co-defendant from participating in the murder, thereby impeaching Stewart's testimony that the co-defendant had been present at the time of the shooting.  The trial judge did not unreasonably apply clearly established federal law in excluding this line of questioning on relevancy grounds.

Petitioner next argues that the trial judge erred in preventing his attorney from questioning Abdallah about his statement that he had sent a piece of PVC pipe found near the scene of the crime for testing to determine if it was connected with the murder, when, in fact, this pipe was never sent for testing.  Petitioner claims that this line of questioning would have established that Abdallah committed perjury about sending the pipe for testing.

5

2:12-cv-13136-BAF-MJH   Doc # 17   Filed 08/05/14   Pg 6 of 13   Pg ID 3696

Petitioner is not entitled to habeas relief on this claim because he did not raise it on his direct appeal.[2]  Although petitioner raised a Confrontation Clause claim on direct appeal involving the trial judge's refusal to allow counsel to question Abdallah about the motel registration card, petitioner did not raise the pipe-testing issue.  Because the factual basis of this Confrontation Clause claim was never presented to the state courts, it has not been properly exhausted. *See, e.g., Vasquez v. Jones,* 496 F.3d 564, 568-69 (6th Cir. 2007).

Further, nothing in the record indicates that the trial judge prevented counsel from questioning Abdallah about whether he had lied about sending the pipe for testing.  The transcript page cited by petitioner, *see* Am. Pet. at 24 (citing Tr. 1-18-06, Page ID 2181), only indicates that defense counsel wished to ask Abdallah whether he believed the victim had been beaten with a pipe.  The trial judge excluded this evidence on relevancy grounds.  Petitioner has not shown that his attorney was prevented from questioning Abdallah further about whether the pipe was in fact sent for testing.

Petitioner next argues that the trial judge erred in refusing to permit counsel to question Abdallah about his allegedly having filed a false police report after he hit a pedestrian with his police car.  Petitioner has not shown that the trial judge made any such ruling.  At the transcript page he cites, *see* Am. Pet. at 25 (citing Tr. 1-18-06, Page ID 2161), Abdullah was simply called and sworn as a witness.  The alleged false police report was raised earlier by the prosecutor who sought a ruling in limine preventing inquiry into this issue.  *See* Tr. 1-18-06, Page ID 2149.  After hearing some brief argument, the trial judge indicated she could not rule on the issue in the abstract,

---

[2]  *See* Defendant-Appellant's Brief on Appeal, pp. 40-43, part of this Court's Dkt. entry 7-34.

6

and she directed defense counsel, prior to questioning Abdullah about it, "to approach the bench and tell me exactly what question you're going to ask because I don't see how it can be used at this point." *Id.* Page ID 2152. Thereafter the issue did not arise, as defense counsel never sought to question Abdullah about it. No violation of petitioner's Confrontation Clause rights has been demonstrated as to this issue.

Petitioner argues that he needed to impeach Abdallah to show that he had coerced Bearia Stewart, the main witness for the prosecution, to provide false testimony implicating petitioner in the murder. When interviewed by Abdullah and again at petitioner's preliminary examination, Stewart indicated that she saw petitioner and his co-defendant arguing and fighting with the victim before dragging him to a nearby field, that she then heard gunshots, and that immediately thereafter petitioner and his co-defendant threatened her to keep quiet. At petitioner's first trial, Stewart recanted her preliminary examination testimony in full. A critical issue at the fourth trial, which resulted in conviction, was her motivation in doing so. Petitioner sought to show that Stewart's preliminary examination testimony had been coerced by Abdullah, who had threatened to jail Stewart and have her children placed in the custody of Protective Services if she did not implicate petitioner. The prosecution, on the other hand, sought to show that Stewart testified truthfully when interviewed by the police and at the preliminary examination, and that she later recanted because she had been threatened and intimidated by petitioner and his co-defendant and by a another person who, at the first trial, made a slashing motion across her throat with her finger when petitioner took the stand. Several witnesses, including Stewart, Abdullah, a court officer who saw the slashing gesture, and the prosecutor at the first trial who interviewed Stewart before and after her recantation, were questioned extensively on both direct and cross-examination,

about the alleged threats and coercion. Petitioner points to no instance where the trial judge

interfered with this line of inquiry. Indeed, both Abdullah and another police officer testified they

questioned Stewart at length and told her she would be jailed and her children taken by Protective

Services if she did not tell them everything she knew, as they suspected she had seen more than she

had initially revealed. Thus, petitioner had a full opportunity to question Abdullah and elicited

testimony, not only from him but also from other witnesses, regarding the coercion he believed led

Stewart to implicate him when interviewed by Abdullah and at petitioner's preliminary

examination. No violation of petitioner's Confrontation Clause rights has been shown.

### B. Claim 2: The Due Process Violation and Waiver of Attorney-Client Privilege Claim

Petitioner next argues that his due process rights were violated when the trial judge

required him to waive his attorney-client privilege as a precondition to calling his prior trial

counsel, Marlon Evans, to rebut the prosecutor's allegations of witness tampering and bribery.

Specifically, petitioner wished to call Evans to counter the following allegations raised by the

prosecutor at trial:

> First, in the opening statement, the prosecution accused Evans of engaging in witness tampering and bribery. R.7-17, Trial Tr., Jan. 10, 2006, Page ID 1322. Then, while examining witness Tammy Wiseman, the prosecutor elicited from her testimony indicating that she previously testified in her investigative subpoena that Evans told her to fabricate a story. R.7-20, Trial Tr., Jan. 17, 2006, Page ID 1855. . . . Then, in closing argument, the prosecutor again contended that Evans tampered with Wiseman and that Wiseman had admitted to that in her investigative subpoena testimony but was now changing her testimony. R.7-22, Trial Tr., Jan. 19, 2006, Page ID 2316-17, 2395. . . .
>      Evans's alleged misconduct on behalf of Mr. Harrington was

8

> brought up again during the testimony of Demetria Brue, who had
> served as the prosecuting attorney in Mr. Harrington's first trial.
> Brue was asked about her knowledge regarding someone offering a
> bribe to Wiseman. R.7-20, Trial Tr., Jan. 17, 2006, Page ID 1981 .
> . . . At that point, Brue admitted that "bribe was the wrong word" but
> proceeded to allege that Evans coerced Wiseman to fabricate a story,
> so as to undermine Stewart's testimony. *Id.*  Later, Brue was asked
> by defense counsel, "so were they paying – is it your understanding
> they were paying her?" *Id.* at 1982.  She responded that she did not
> recall if money was involved, but that Wiseman told her that Evans
> and Michael Harrington (the defendant's brother) had taken her out
> to a restaurant. *Id.*

Am. Pet. at 32-33.  Petitioner's trial attorney avers that, as to these issues, Evans "was going to

testify in rebuttal to Prosecutor Brue's testimony regarding (a) allegations of bribery or witness

tampering . . . ." *Id.* Ex. B.

The Michigan Court of Appeals rejected this argument for the following reasons:

> Relying on *People v. Squire*, 123 Mich.App. 700; 333 NW2d
> 333 (1983), defendant argues that he should not have been required
> to waive the attorney-client privilege, because Evans did not intend
> to testify regarding communications between himself and defendant.
> In *Squire*, this Court stated:

>> Michigan has long recognized that a party
>> does not waive the attorney-client privilege by
>> presenting his or her attorney as a witness to testify
>> regarding matters not communicated by the client.
>> *Steketee v. Newkirk*, 173 Mich. 222, 232; 138 NW
>> 1034 (1912); *In re Dalton Estate*, 346 Mich. 613,
>> 620-621; 78 NW2d 266 (1956). Here, defense
>> counsel sought the testimony of attorney Minock to
>> rebut the prosecutor's argument that the testimony of
>> the defendant's sister and her two friends was a
>> recent fabrication, dreamed up for the trial. Given the
>> fact that the three were eyewitnesses to the shooting
>> and that their testimony directly contradicted the
>> testimony of witness Hudson Ray, Jr., we find that
>> the error cannot be harmless. [ *Id.* at 706.]

*     *     *

9

Furthermore, the attorney-client privilege protects communications regarding past wrongdoing, but does not apply to ongoing or future wrongdoing. Where the attorney-client privilege advances a criminal enterprise or fraud, the privilege will not apply. *People v. Paasche*, 207 Mich.App 698, 705-706; 525 NW2d 914 (1994). The crime-fraud exception applies where the prosecution shows "that there is a reasonable basis to (1) suspect the perpetration or attempted perpetration of a crime or fraud and (2) that the communications were in furtherance thereof." *Id*. at 707.

Here, we agree that the trial court erred in stating that defendant would be required to waive the attorney-client privilege, regardless of the substance of Evans's proposed testimony. As the foregoing authorities indicate, waiver depends on the purpose and nature of the testimony. However, considering the purpose for which Evans's testimony was offered, the trial court correctly determined that the privilege would be waived. We will not reverse where the trial court reaches the correct result. *People v. Lyon*, 227 Mich.App 599, 612-613; 577 NW2d 124 (1998).

According to both the trial record and counsel's arguments when discussing this issue at sentencing, counsel sought to call Evans as a witness only to testify regarding the allegations of witness tampering and bribery. Because these allegations involved ongoing criminal matters, the crime-fraud exception to the privilege would have applied and defendant could not call Evans as a witness without waiving the attorney-client privilege. We note that defendant filed a motion for a new trial in which he offered additional reasons for calling Evans as a witness that would not have required waiver of the privilege. However, he did not identify these other reasons on the record at trial. Moreover, the trial court agreed to allow defendant to make a separate record on this issue, but he did not do so. Under these circumstances, appellate relief is not warranted.

*Harrington*, 2008 WL 747084, at **2-3.

This claim fails because petitioner has not shown that the Michigan Court of Appeals' decision was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. The Michigan Court of Appeals found that the trial judge erred as a matter if Michigan law in requiring a blanket waiver of the attorney-client privilege before she would permit Evans to testify. However, that court also found that the trial judge's ruling was correct for a

10

different reason, namely, because an exception applied due to the nature of the testimony petitioner

intended to elicit from Evans.  Both the rule and the exception are matters of Michigan law.

This was as evidentiary ruling, and such rulings rarely form a basis for habeas relief.

As the Sixth Circuit has noted,

> [Petitioner's] second method to appeal this ruling is through
> a due process challenge under the Fourteenth Amendment. Such an
> appeal would require this Court to grant habeas corpus relief based
> on a state evidentiary ruling, which occurs exceedingly rarely.
> *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385
> (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092,
> 111 L.Ed.2d 606 (1990)); *Jordan v. Hurley*, 397 F.3d 360, 362 (6th
> Cir.2005). "In conducting habeas review, a federal court is limited
> to deciding whether a conviction violated the Constitution, laws, or
> treaties of the United States." *Estelle*, 502 U.S. at 68, 112 S.Ct. 475
> (citing 28 U.S.C. § 2241). Therefore, the only way habeas could be
> granted would be if we found the state evidentiary ruling to be so
> egregious that it "by itself so infected the entire trial that the
> resulting conviction violates due process." *Id*. at 72, 112 S.Ct. 475
> (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38
> L.Ed.2d 368 (1973); *Maldonado v. Wilson*, 416 F.3d 470, 476 ("The
> Due Process Clause provides a remedy when the admission of
> unduly prejudicial evidence renders a trial fundamentally unfair ...
> [I]t is not the province of a federal habeas court to reexamine
> state-court determinations on state-law questions.")

*Howard v. McLemore*, 173 F. App'x 441, 444 (6th Cir. 2006).  Petitioner has not shown that the

Michigan Court of Appeals' decision was erroneous (as a matter of either state or federal law) or,

more importantly, that Evans' exclusion "so infected the entire trial that the resulting conviction

violates due process."  As in *Howard*, "[t]he evidence at issue in this appeal is relatively minor in

comparison to the scope of the entire trial."  *Id.*  Not only was the issue minor, but Wiseman

testified at trial that while Evans spoke to her, he did not tell her how to testify.  In fact, she

indicated repeatedly that she acted on her own when she had lied on previous occasions about

having been with Stewart on the night of the murder.  *See, e.g.,* Jan. 17, 2006, Tr. 41-44, 47, 57.

11

2:12-cv-13136-BAF-MJH   Doc # 17   Filed 08/05/14   Pg 12 of 13   Pg ID 3702

Therefore, Wiseman herself denied any suggestion that she had lied at Evans' behest. In any event, petitioner has failed to show that the trial judge's ruling or the Michigan Court of Appeals' decision as to this evidentiary ruling violated petitioner's constitutional right to present a defense.

### C. Claim 3: The Actual Innocence Claim

Finally, petitioner argues he is entitled to relief on a freestanding claim of actual innocence. Such a claim is not cognizable on federal habeas review. *See Thomas v. Perry*, 553 F. App'x 485, 487 (6th Cir. 2014), citing *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *Hodgson v. Warren*, 622 F.3d 591, 601 (6th Cir. 2010). Further, petitioner errs as a matter of fact in asserting that "[a]ll of the evidence discussed above establishes that Mr. Harrington is actually innocent." Am. Pet. at 42. As noted, Bearia Stewart gave a video-recorded statement to the police, and she testified at petitioner's preliminary examination, that she saw petitioner and his co-defendant (both of whom she knew from the neighborhood) arguing and fighting with the victim and then dragging him to a nearby field. She also testified that she immediately thereafter heard gunshots, and that petitioner and his co-defendant then threatened her to keep quiet. While no physical evidence linked petitioner to the crime, Stewart's testimony alone provides a sufficient factual basis for the jury's verdict. Even if a freestanding claim of actual innocence were cognizable, this is not an "actual innocence" case.

### IV. Conclusion

For the reasons stated above, the Court shall deny petitioner's application for a writ of habeas corpus. The Court shall also decline to issue a certificate of appealability, petitioner having failed to make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). The Court shall also deny leave to appeal *in forma pauperis*, as any appeal in this

matter would be frivolous.  Accordingly

IT IS ORDERED that petitioner's application for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that no certificate of appealability shall issue.

IT IS FURTHER ORDERED that petitioner may not proceed on appeal *in forma pauperis.*

        S/ Bernard A. Friedman_____
        BERNARD A. FRIEDMAN
        SENIOR UNITED STATES DISTRICT JUDGE

Dated:  August 5, 2014
      Detroit, Michigan

13